RECEIVED

NOV 2 2 2005

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

## LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| TYRONE JENKINS | CIVIL ACTION NO. 04-2212 |
| VS. | SECTION P |
| TIM WILKINSON, WARDEN | JUDGE DOHERTY |
| | MAGISTRATE JUDGE HILL |

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of *habeas corpus* filed by *pro se* petitioner, Tyrone Jenkins, pursuant to 28 U.S.C. §2254. Petitioner is currently confined at the Winn Correctional Center, Winnfield, Louisiana.

## FACTUAL and PROCEDURAL HISTORY

On May 18, 1999 Jenkins was charged by Bill of Information with the armed robbery of Heather Russell. See *State v. Jenkins*, 15th JDC No. 82665. The offense was alleged to have been committed at gunpoint on April 9, 1999 at the Ramada Inn. [rec. doc. 15, Ex. I, pg. 15]. Jenkins was arrested by Detective Moore and placed in custody at the Lafayette Parish Correctional Center on April 15, 1999 for this offense pursuant to an arrest warrant which was obtained after petitioner's fingerprints were found on a paper in Ms. Russell's room. [tr. pg. 362-363, 397[1]]. On May 26, 1999, the Public Defender's

---

[1]The State has separately marked the transcript of the Motion to Suppress, trial transcript and particular witnesses who testified at trial as Exhibits E, F, and G. However, these events occurred chronologically within the context of the trial and the pages of the transcript are therefore sequenced numerically. Accordingly, for ease of

Office appointed counsel to represent petitioner on this charge. [rec. doc. 15, Ex. I, pg. 1]. Jenkins, represented by counsel, waived arraignment and entered a plea of not guilty to the Russell armed robbery on June 15, 1999. [rec. doc. 15, Ex. I, pg. 1].

A search warrant executed at Jenkins' residence in connection with the Russell armed robbery, recovered a gold watch which was later discovered to be the property of Glen Grigsby. [tr. pg. 194-197, 362-363]. On April 28, 1999 Detective Hundley interviewed petitioner at the jail after receiving a waiver of rights form. The interview was terminated when petitioner requested to speak with counsel. Hundley then "arrested" petitioner "based on the *modus operandi* from the previous case and the watch that was recovered when Detective Moore did the search warrant." [tr. pg. 136-137]. On August 5, 1999, a physical lineup, including Jenkins, was conducted by Detective Hundley at the jail. Prior to conducting the lineup, petitioner asked that counsel be present. However, he could not remember the name of his lawyer, but that his attorney was with the Public Defender's Office. [tr. pg. 155, 138]. Detective Hundley contacted the Public Defender's Office. That office advised that since no interrogation was to be conducted, they would not send an attorney to represent Jenkins. [tr. pg. 138-139, 158]. At the lineup, Grigsby identified Jenkins as the person who had robbed him at gunpoint at the Holidome Hotel on March 9, 1999. [tr. pg. 201-205]. Thereafter, on August 23, 1999 a Bill of Information was filed against Jenkins charging him with the March 9, 1999 armed

---

reference, the undersigned will refer to these portions of the record as the trial transcript, collectively, citing the appropriate page number of the transcript.

robbery of Grigsby. See *State v. Jenkins,* 15th JDC No. 83973 [rec. doc. 15, Ex. C, and Ex. B, pg. 14]. On August 25, 1999, the Public Defender's Office appointed counsel to represent petitioner on this charge. On September 21, 1999, Jenkins, represented by counsel, waived arraignment and entered a plea of not guilty to the Grigsby armed robbery. [rec. doc. 15, Ex. B, pg. 1].

Both cases were consolidated for trial which began on November 13, 2000. Prior to the presentation of evidence, petitioner's Motion to Suppress the pre-trial lineup at which victim Grigsby identified petitioner as the perpetrator of the March 9, 1999 armed robbery was taken up and denied. [tr. pg. 129-159]. At trial, evidence of the lineup identification was presented. [tr. pg. 234-235, 201-205]. Additionally, Grigsby made an in-court identification of petitioner as his assailant. [tr. pg. 236]. On November 15, 2000, petitioner was convicted of both counts of armed robbery in the 15th Judicial District Court for Lafayette Parish. On December 18, 2000, petitioner was sentenced to thirty years imprisonment on each count, the sentences to run concurrently.

Petitioner directly appealed his convictions to Louisiana's Third Circuit Court of Appeals raising only two assignments of error: (1) insufficient evidence to support petitioner's convictions; and (2) that the trial court erred in denying petitioner's motion to reconsider his sentences. On February 6, 2002, the Third Circuit Court of Appeals affirmed petitioner's convictions and sentences. *State v. Jenkins,* 2001-1056 (La. App. 3d Cir. 2/6/2002), 812 So.2d 156 (unpublished) [rec. doc. 15, Ex. J]; *State v. Jenkins,* 2001-

1055 (La. App. 3d Cir. 2/6/2002), 812 So.2d 156 (unpublished) [rec. doc. 15, Ex. J].

Petitioner did not seek further review in the Louisiana Supreme Court.[2]

On January 27, 2003, petitioner filed an Application for Post-Conviction Relief in the 15th Judicial District Court. Petitioner asserted the following claims for relief: (1) that petitioner had been denied his right to counsel during a physical lineup; (2) that witness Grigsby's in-court identification of petitioner lacked reliability based on unduly suggestive identification procedures; and (3) that the trial court abused its discretion by qualifying Officer Kevin Louis Stoutes, a witness for the State, as an expert in the field of fingerprint analysis. [rec. doc. 15, Ex. L]. The application was denied by the trial court on January 28, 2003. [rec. doc. 15, Ex. M].

On July 29, 2003, the Louisiana Third Circuit Court of Appeals denied petitioner's request for writs finding "no error in the trial court's ruling." *State v. Tyrone Paul Jenkins*, KH-03-00363 (La. App. 3d Cir. 7/29/2003). [rec. doc. 15, Ex. J]. The Louisiana Supreme Court denied petitioner's request for writs on October 1, 2004. *State*

---

[2] In his standardized petition, petitioner notes that he sought review in the Louisiana Supreme Court under docket number KH-03-00363 which the court denied on July 29, 2003. However, that docket number and decision date corresponds to the Louisiana Third Circuit Court of Appeals' decision on post-conviction review. Moreover, the undersigned's research has revealed no evidence that any writ was filed in the Louisiana Supreme Court in connection with petitioner's direct appeal. There is no reported decision corresponding to such a proceeding in the published jurisprudence of the State of Louisiana. Additionally, the Clerk of the Louisiana Supreme Court confirmed that petitioner filed only one writ in that court, that writ corresponding to petitioner's post-conviction proceeding. Further, in his writ application to the Louisiana Supreme Court on post-conviction review, petitioner states that he did not seek review in the Louisiana Supreme Court. Rather, he avers that following the Third Circuit's February 6, 2002 decision on direct appeal "[p]etitioner timely filed an application for post-conviction relief within the 15th Judicial District Court...."

*of Louisiana ex rel. Tyrone Jenkins v. State of Louisiana*, 2003-2543 (La. 10/1/2004), 883 So.2d 1000. [rec. doc. 15, Ex. K].

On October 25, 2004, petitioner filed the instant federal *habeas* petition alleging the following claims for relief: (1) denial of the right to counsel during a "physical lineup"; (2) insufficient evidence to support petitioner's conviction on the March 9, 1999 charge; (3) that witness Grigsby's in-court identification of petitioner lacked reliability based on unduly suggestive identification procedures in violation of petitioner's due process rights; (4) that the trial court abused its discretion by qualifying Kevin Louis Stoutes, a witness for the State, as an expert in the field of fingerprint analysis; and (5) ineffective assistance of counsel due to counsel's (a) failure to show up at petitioner's lineup, and failure to object to the lineup thereafter; (b) failure to investigate and produce mitigating evidence on petitioner's behalf; (c) failure to object to the testimony of witness Grigsby; and (d) failure to object to the "expertise" of Officer Stoutes.

By separate Partial Judgment, petitioner's ineffective assistance of counsel claims and insufficient evidence claim (claims 5(a)-(d) and 2) have been denied and dismissed with prejudice because these claims are procedurally defaulted. [rec. doc. 16]. Therefore, the only claims remaining for this court's review are petitioner's claims that petitioner was denied the right to counsel during a "physical lineup", that witness Grigsby's in-court identification of petitioner lacked reliability based on unduly suggestive identification procedures in violation of petitioner's due process rights and that the trial

court abused its discretion by qualifying Kevin Louis Stoutes, a witness for the State, as an expert in the field of fingerprint analysis (claims 1, 3 and 4 herein).

The State has filed a Response to the petition with incorporated memorandum in opposition to federal *habeas corpus* relief. [rec. doc. 15]. This Report and Recommendation follows.

## LAW AND ANALYSIS

### *Standard of Review*

This *habeas* petition was filed on May 3, 2002. Therefore the standard of review is set forth in 28 U.S.C. §2254(d), as amended in 1996 by the Antiterrorism and Effective Death Penalty Act (AEDPA). *Knox v. Johnson,* 224 F.3d 470, 476 (5th Cir. 2000); *Orman v. Cain,* 228 F.3d 616, 619 (5th Cir. 2000).[3] AEDPA substantially restricts the scope of federal review of state criminal court proceedings in the interests of federalism, comity, and finality of judgments. *Montoya v. Johnson*, 226 F.3d 399, 403-04 (5th Cir. 2000) citing *Teague v. Lane,* 489 U.S. 288, 306, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) and *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1516, 146 L.Ed.2d 389 (2000)[4]

---

[3]Before enactment of AEDPA, "a federal court entertaining a state prisoner's application for *habeas* relief ...exercise[d] its independent judgment when deciding both questions of constitutional law and mixed constitutional questions (i.e., application of constitutional law to fact). In other words, a federal *habeas* court owed no deference to a state court's resolution of such questions of law or mixed questions." *Montoya* , 226 F.3d at 403-04 citing *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1516, 146 L.Ed.2d 389 (2000) and 28 U.S.C. S 2254(d) (West 1994).

[4]Justice O'Connor delivered the opinion of the Court with respect to the standard of review, while Justice Stevens delivered the opinion of the court with respect to other aspects of the opinion which have no bearing on the issues herein. Accordingly, the undersigned will refer to Justice Steven's opinion as a concurring opinion.

(noting that AEDPA "placed a new restriction on the power of federal courts to grant writs of habeas corpus to state prisoners.").

Title 28 U.S.C. §2254(d) as amended, states as follows:
(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the deferential scheme of §2254(d), as amended, this court must give deference to a state court decision for "any claim that was adjudicated on the merits in State court proceedings" unless the decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. §2254(d)(1), or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(2).

A *habeas* petitioner has the burden under AEDPA to prove that he is entitled to relief. *Ormon*, 228 F.3d at 619 citing *Williams*, 120 S.Ct. at 1518, and *Engle v. Isaac*, 456 U.S. 107, 134-35, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). Under §2254(d), as amended, "[t]he federal courts no longer have a roving commission to discern and

"correct" error in state court proceedings, but must exercise a more limited review . . ."
*Grandison v. Corcoran*, 78 F.Supp.2d 499, 502 (D. Md. 2000). Federal courts may not grant the writ merely on a finding of error by a state court or on a finding of mere disagreement with the state court. *Montoya*, 226 F.3d at 404; *Orman*, 228 F.3d at 619.

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by ... [the Supreme Court] on a question of law or if the state court decides a case differently than ... [the Supreme Court] has on a set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) citing *Williams*, 120 S.Ct. at 1523; *Montoya*, 226 F.3d at 403-04 citing *Williams*, 120 S.Ct. at 1523. "The 'contrary to' requirement 'refers to holdings, as opposed to the dicta, of...[the Supreme Court's] decisions as of the time of the relevant state-court decision.'" *Dowthitt* , 230 F.3d at 740 citing *Williams*, 120 S.Ct. at 1523.

Under the "unreasonable application" clause, a federal *habeas* court may grant the writ only if the state court "identifies the correct governing legal principle from ... [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Dowthitt*, 230 F.3d at 741 citing *Williams*, 120 S.Ct. at 1523. The standard is one of objective reasonableness. *Montoya*, 226 F.3d at 404 citing *Williams*, 120 S.Ct. at 1521-22. A federal *habeas* court may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied

clearly established federal law erroneously or incorrectly...[r]ather, that application must also be unreasonable." *Williams,* 120 S.Ct. at 1522.

Section 2254(d)(2) speaks to factual determinations made by the state courts. *Dowthitt,* 230 F.3d at 741, also citing 28 U.S.C. S 2254(e)(1). Federal *habeas* courts presume such determinations to be correct; however, the petitioner can rebut this presumption by clear and convincing evidence. *Id.* Thus, this court must defer to the state court's decision unless it was based on an unreasonable determination of the facts in light of the record of the State court proceeding. *Id.* citing 28 U.S.C. §2254(d)(2); *Knox,* 224 F.3d at 476 citing *Chambers v. Johnson,* 218 F.3d 360, 363 (5th Cir.2000).

## I. Denial of the Right to Counsel during "Physical Lineup"

Petitioner argues that he was denied his right to counsel during the physical lineup which occurred at the jail where petitioner was incarcerated on August 5, 1999, conducted in connection with the criminal investigation of the March 9, 1999 armed robbery of Glen Grigsby, at which Grigsby identified petitioner as the man who robbed him at gunpoint.

The Sixth Amendment guarantees an accused the right to counsel; this right, however, "does not attach until a prosecution is commenced that is, at or after the initiation of adversary judicial criminal proceedings-whether by way of formal charge, preliminary hearing, indictment, information or arraignment." *McNeil v. Wisconsin,* 501 U.S. 171, 175, 111 S.Ct. 2204, 2207, 115 L.Ed.2d 158 (1991); *Kirby v. Illinois,* 406 U.S.

682, 688-89, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972); *Texas v. Cobb*, 532 U.S. 162, 165, 172, 167-168, 121 S.Ct. 1335 (2001); *United States v. Gouveia*, 467 U.S. 180, 188, 104 S.Ct. 2292, 2297, 81 L.Ed.2d 146 (1984) (citation omitted); *United States v. Heinz*, 983 F.2d 609, 612 (5th Cir. 1993). Thus, the Sixth Amendment right to counsel does not attach until at or after a formal charge, an indictment or an information has been filed, or a preliminary hearing or arraignment on the offense has been conducted. *Cobb,* 532 U.S. at 167-168 citing *McNeil,* 501 U.S. at 175. Accordingly, there is no right to counsel at pre-indictment lineups as that right has not attached. *Kirby,* 406 U.S. at 688-89, 92 S.Ct. at 1881-1882; *Hall v. Lane,* 804 F.2d 79, 81-83 (7th Cir.1986), *cert. denied,* 480 U.S. 921, 107 S.Ct. 1382, 94 L.Ed.2d 696 (1987); *United States v. Larkin*, 978 F.2d 964, 696 (7th Cir. 1992); *United States v. Doran*, 624 F.Supp. 94, 96-97 (E.D.N.Y. 1985). Moreover, the initiation of adversary criminal proceedings for an offense causes the Sixth Amendment right to counsel to attach *for that specific offense. United States v. Carpenter,* 963 F.2d 736, 739 (5th Cir.1992). Thus, the "Sixth Amendment right [to counsel] ⋯ is offense-specific." *McNeil,* 501 U.S. at 175, 111 S.Ct. at 2207; *Cobb*, 532 U.S. at 162. The right does not attach to future as yet formally uncharged prosecutions. *Id.; Cobb*, 532 U.S. at 167-168. Thus, the fact that a defendant is in custody for an unrelated offense "has no bearing" on the issue. *United States v. Tyler*, 592 F.2d 261, 263 (5th Cir. 1979) citing *Moore v. Illinois*, 434 U.S. 220, 228, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977).

Under Louisiana law, "prosecution" of felony offenses "shall be instituted by indictment or information." La. C.Cr.P. art. 382. An "information" is a written accusation of a crime made by the district attorney or the city prosecutor and signed by him. It must be filed in open court in a court having jurisdiction to try the offense, or in the office of the Clerk thereof." La.C.Cr.P. art. 384. Given the United States Supreme Court's mandates, with respect to the Sixth Amendment, the Fifth Circuit has held that under Louisiana law, the adversarial process is initiated when a preliminary examination pursuant to Louisiana Code of Criminal Procedure article 292 is conducted. *Daigre v. Maggio*, 705 F.2d 786 (5th Cir. 1983); *Frisco v. Blackburn*, 782 F.2d 1353, 1355 (5th Cir. 1986). See also *McDonald v. Blackburn*, 806 F.2d 613, 619 fn. 6 and 622-623 (5th Cir. 1986).[5]

In the instant case, the August 5, 1999 physical lineup occurred after petitioner had been formally charged by Bill of Information with and had appeared for arraignment on the April 9, 1999 armed robbery of Ms. Heather Russell, while petitioner was in custody for that unrelated offense. Thus, petitioner's Sixth Amendment Right to counsel had attached with respect to the April 9, 1999 armed robbery of Heather Russell.

---

[5]Similarly, the Louisiana Supreme Court has held that under Louisiana analogue of the Sixth Amendment, "adversary judicial proceedings are initiated" with an article 292 preliminary examination (*State v. Frisco*, 411 So.2d 37, 39 (La. 1982)), but not with an article 230.1 initial appearance even if counsel is then appointed (*State v. Friddle*, 396 So.2d 1242, 1246-1247 (La. 1981)). See *McDonald v. Blackburn*, 806 F.2d 613, 619 fn. 6 and 622-623 (5th Cir. 1986). Curiously, without mention of its prior decision in *Friddle*, in a more recent case, the Louisiana Supreme Court has held that under the Louisiana Constitution, the right to counsel attaches when an article 230.1 initial appearance is conducted. *State v. Hattaway*, 621 So.2d 796 (La. 1993), overruled on other grounds, *State v. Carter*, 664 So.2d 367 (La. 1995).

The complained of August 5, 1999 physical lineup was not conducted in connection with the pending formally charged offense, but rather was conducted in connection with the investigation of a separate and distinct criminal offense, the March 9, 1999 armed robbery of Glen Grigsby. Louisiana law provides that criminal prosecutions are instituted either by the filing of an indictment or an information. La.C.Cr.P. art. 382(A). On the record before this court, when the physical lineup was conducted petitioner had not been formally charged with that criminal offense. A Bill of Information was not filed against Jenkins charging him with the March 9, 1999 armed robbery until August 23, 1999 and petitioner was not arraigned on that offense until September 21, 1999. Moreover, although petitioner may have been "arrested" by Detective Moore on the Grigsby armed robbery at the conclusion of his April 28, 1999 interview, the record is devoid of any indiction that any adversarial judicial preliminary hearing, or more specifically, an article 292 preliminary examination, was held in connection with the March 9, 1999 armed robbery prior to petitioner's indictment or arraignment on that charge, nor does petitioner allege that any such proceeding was conducted at which a right to counsel may have attached.[6] Thus, at the time of the

---

[6]This case is therefore distinguishable from the facts presented to the Fifth Circuit in *Daigre v. Maggio*, 705 F.2d 786 (5th Cir. 1983). In *Daigre*, the petitioner had been arrested and held on a single armed robbery charge. A preliminary hearing was conducted with respect to that charge to determine if probable cause existed to continue petitioner's detention. At the preliminary hearing, probable cause was found. After the preliminary hearing, but before the filing of a bill of information, a physical lineup was conducted. Under these circumstances, the court found that although the lineup was "pre-information", adversarial judicial proceedings had been initiated against Daigre by virtue of the preliminary examination. Thus, the right to counsel was found to have existed. *Id.* at 788. Here, there is no evidence that any adversarial judicial proceeding with respect to the March 9, 1999 Grigsby armed robbery had taken place prior to the time the lineup was conducted. Thus, *Daigre* is inapplicable in this case. See also *State v. Reynolds*, 473 So.2d 886, 890 (La. App. 3rd Cir. 1985) (distinguishing *Daigre* on grounds that no

time of the physical lineup, Jenkins had no Sixth Amendment Right to Counsel with respect to the March 9, 1999 armed robbery because that right had not yet attached. Petitioner's claim is therefore without merit.[7]

Moreover, even if petitioner's Sixth Amendment right to counsel attached by virtue of any article 292 preliminary examination or article 230.1 appearance[8] before a Magistrate which may have been conducted after petitioner's April 28, 1999 "arrest" by Detective Hundley, which events are not alleged by petitioner and do not appear in the state court record, petitioner's claim is nevertheless without merit.

In *Gilbert v. California*, 388 U.S. 263, 273-274 (1967) the Supreme Court established a *per se* rule which excludes evidence of uncounseled pretrial line-ups conducted after the Sixth Amendment right attached. At first blush, it would appear that

---

probable cause determination was made at a preliminary hearing prior to the line-up in question and therefore, the defendant was not entitled to counsel at the line-up); *State v. Bickham*, 404 So.2d 929 (La. 1981) (holding that "Absent special circumstances the presence of counsel is not required at pre-indictment line-ups.").

[7]Although the Supreme Court has found that a "suspect subject to custodial interrogation" has a Fifth Amendment right to "an attorney and to have his counsel present during questioning..."petitioner does not allege nor is there any indication in the record that petitioner was interrogated by police at the August 5, 1999 physical lineup. See *Davis v. United States*, 512 U.S. 452, 114 S.Ct. 2350, 2354 (1994); *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1966). Accordingly, the Fifth Amendment does not apply in this case. See *Kirby*, 406 U.S. at 687-688 (holding that the Fifth Amendment "has no applicability" in the context of a physical lineup because physical lineups merely require the suspect to exhibit his person for observation and requires no testimonial or compulsory self incrimination, the right on which the Fifth Amendment jurisprudence is based).

[8]The Fifth Circuit has not yet determined whether an article 230.1 appearance before a magistrate constitutes an adversary criminal proceeding sufficient to trigger the protections of the Sixth Amendment. However, the Fifth Circuit has strongly suggested that such an appearance, even where counsel is appointed, is insufficient. See *McDonald v. Blackburn*, 806 F.2d 613, 622-623 (5th Cir. 1986) (noting that "it is highly questionable that [the defendant's] Sixth Amendment right to counsel arose prior to both preliminary examination and formal charge, notwithstanding 'the existence of an attorney-client relationship' with Cuccia [a public defender appointed to represent petitioner at his article 230.1 appearance]...."). Moreover, under Texas law, the Fifth Circuit has held that neither arrest nor appearance before a magistrate shortly after arrest triggers the right to counsel. *Tarpley v. Estelle*, 703 F.2d 157, 162 (5th Cir. 1983).

this rule may have been applied to Grigsby's testimony regarding his lineup identification.

However, the line-up in question in *Gilbert* was conducted *without notice* to the

defendant's counsel, a situation opposite of that which transpired in petitioner's case. It

is undisputed that the Public Defender's Office was notified of petitioner's line-up.

However, since no interrogation was to be conducted, that office did not furnish counsel.

[tr. pg. 138-139, 147, 158, 201-202].    Indeed, in the instant petition, Jenkins

acknowledges this fact, arguing that "his counsel of record" was ineffective because he

"failed to show up at his lineup...."[9] [See rec. doc. 1, Memorandum at pg. 18].   Under

similar circumstances, the Fifth Circuit has suggested that when an attorney excludes

himself from the line-up proceedings, the Sixth Amendment right to counsel at line-up

proceedings is not violated, but rather, the attorney's inaction may have bearing on a

claim of ineffective assistance of counsel. *Daigre v. Maggio*, 705 F.2d 786, 788 (5th Cir.

1983).  See also *Meadows v. Kuhlmann*, 644 F.Supp. 757, 760 (E.D.N.Y. 1986), aff'd,

812 F.2d 72 (2nd Cir. 1987) (absent testimony that counsel had no notice of the proposed

line-up, line-up testimony was not inadmissible on Sixth Amendment grounds because

counsel cannot frustrate law enforcement efforts); *State v. Smith*, 357 So.2d 798 (La.

1978) (defendant's right to counsel at line-up was not violated when public defender

decided not to attend the line-up noting that "the State should not be prevented from using

---

[9]That claim has been dismissed because the claim is procedurally defaulted. [rec. doc. 16].

evidence obtained through a line-up...merely because the defendant's attorney decides not to attend and does not request that it be delayed.").

Moreover, *Gilbert* and other Supreme Court cases involving identification issues were meant to encourage counseled line-ups in order to insure proper identifications. If this court were to rule in petitioner's favor based the refusal of counsel to attend the line-up, the administration of justice would be greatly impaired by allowing counsel to frustrate the legitimate goals of law enforcement. Additionally, such a ruling might in the long run cause harm to other defendants because law enforcement authorities might choose to use other procedures that are more suggestive than line-ups, possibly resulting in an increased number of miscarriages of justice. See *Meadows*, 644 F.Supp. at 760. That result cannot be sanctioned by this court.

Moreover, even assuming *arguendo* that petitioner's Sixth Amendment right to counsel at the physical lineup was violated, Grigsby's in-court identification was admissible because it was reliable and had an independent source untainted by any alleged illegality of the line-up procedures, and Grigsby's testimony regarding his pre-trial identification of petitioner was harmless constitutional error. See *United States v. Wade,* 388 U.S. at 239-241; *United States ex rel. Moore v. Illinois*, 577 F.2d 411, 412-416 (7th Cir. 1978) citing *Moore v. Illinois,* 434 U.S. 220 (1977), *Gilbert v. California*, 388 U.S. 263 (1967) and *Chapman v. California*, 386 U.S. 18 (1967).

After the right to counsel attaches, trial testimony of the defendant's identification at an uncounseled pretrial lineup is error. However, such error may be harmless. *Moore*, 434 U.S. at 466. To be harmless, it must be clear beyond a reasonable doubt that the constitutional error did not contribute to the conviction. *Chapman*, supra. When a courtroom identification is reliable and based on an independent source, it is unlikely that evidence of a pretrial identification affected the jury's verdict, and the error in admission is harmless. See *Moore*, 577 F.2d at 412-417; See also *Meadows v. Kuhlmann*, 812 F.2d 72, 76 (2nd Cir. 1987); *Frisco*, 411 So.2d at 39-40; *Moore v. Oliver*, 347 F.Supp. 1313, 1320 (W.D.Va. 1972).

In assessing reliability, which is the linchpin in determining the admissibility of identification testimony, the Supreme Court has set forth five considerations: (1) the witness's opportunity to view the perpetrator at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description; (4) the level of certainty demonstrated when making the identification; and (5) the time between the crime and the identification ("the *Biggers* factors"). *Biggers,* 409 U.S. at 199-200; *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253 (1977).

On the record before this court, the undersigned finds that Grigsby's in-court identification of petitioner was reliable under the *Biggers* factors even if Grigsby first identified petitioner at an uncounseled pretrial lineup. At the time of the armed robbery, Grigsby testified that although not of great duration, he had a sufficient opportunity to

view the robber as he stood in the doorway of the hotel, unmasked and in close proximity. [tr. pg. 237-239]. Indeed, Grigsby repeatedly testified that he looked the robber "straight in the eyes" while he was running to the door to push him out. [tr. pg. 238, 247]. Thus, while in court, Grigsby testified that he had "no doubt" that Jenkins was his assailant. [tr. pg. 236].

Grigsby's description of the robber, while general, has not been shown to have been grossly inaccurate as petitioner suggests. Acknowledging that he is not a detective trained at noting details, Grigsby described his assailant as a black male, 5'9" or 5'10" in height weighing approximately 160 to 170 pounds, wearing a flowered shirt and shorts below the knee. [tr. pg. 237-238]. No testimony as to petitioner's height and weight at the time of the Grigsby robbery was elicited from Jenkins at trial or during the hearing on petitioner's motion to suppress. The lineup information, however, reveals that at the time of the lineup, Jenkins was 5'9" tall weighing 140 pounds, physical attributes consistent with and not significantly different than those described by Grigsby. [rec. doc. 15, Ex. D, pg. 28]. Jenkins places great emphasis on the fact that Grigsby did not describe his gold tooth to police. However, that is understandable, given that the lineup photographs taken of Jenkins similarly fail to reveal this characteristic. [rec. doc. 15, Ex. D, pg. 31-32]. The same is true as to any allegation that Jenkins has "short" as opposed to "long" hair. Given the wide range of subjective interpretation given those terms, the lineup photographs simply do not definitively demonstrate that petitioner's hair was either "long" or "short."

Rather, depending on the viewer's interpretation of those terms, petitioner's hair could be described as either.

Moreover, Grigsby testified regarding his high degree of attention to the robber noting not only that he looked him "straight in the eye" but also that as a result of the encounter he had retained a "picture in [his] mind" of "exactly who he [the robber] was." [tr. pg. 238, 247, 243]. This enabled Grigsby to positively identify Jenkins as the robber at the at the pretrial lineup despite the five month delay between the robbery and the lineup. [tr. pg. 243-244]. Indeed, both at the lineup and at trial, Grigsby had "no doubt" that Jenkins was the perpetrator of the March 9, 1999 robbery. [tr. pg. 235-236, 243]. In sum, the evidence adduced at trial and the suppression hearing shows that Grigsby's in-court identification of Jenkins was reliable.

In determining whether an in-court identification has an independent source untainted by an unconstitutional pretrial lineup procedure, courts consider similar factors: (1) the prior opportunity the witness had to observe the alleged criminal act; (2) the existence of any discrepancy between any pre-lineup description and the defendant's actual description; (3) any identification prior to the lineup of another person; (4) any identification by picture of the defendant prior to the lineup; (5) failure to identify the defendant on a prior occasion; (6) any time lapse between the alleged act and the lineup identification; and (7) any other factors raised by the totality of the circumstances that

bear on the likelihood that the witness's in-court identification is not tainted by the illegal

lineup (the "*Wade* factors"). *Wade*, 388 U.S. at 241; *Frisco,* 782 F.2d at 1357.

As indicated above in discussing the *Biggers* factors, the undersigned believes that

Grigsby had a sufficient opportunity to observe his robber at the scene of the crime to

provide a firm basis for subsequent identifications. Moreover, petitioner has failed to

demonstrate any substantial discrepancies between Grigsby's pre-lineup description and

the defendant's actual description. Additionally, the five month lapse in time between

Grigsby's lineup identification and the robbery has little significance given Grigsby's

high degree of attention to the robber at the time of the robbery while he looked Jenkins

"straight in the eye" and his doubt-free ability to positively identify petitioner as his

assailant based on the "picture" of Jenkins that Grigsby retained in mind from his

observation of petitioner at the crime scene. Moreover, consideration of the additional

factors set forth in *Wade* does not benefit petitioner. Grigsby never identified anyone

other than petitioner as his assailant, prior or subsequent to the August 5, 1999 lineup,

nor did he ever fail to identify Jenkins as his robber. To the contrary, on each occasion

Grigsby was asked to identify his robber Grigsby positively and without hesitation chose

Jenkins. Taken together, the undersigned finds that the above factors show that an

independent source for Grigsby's in-court identification of Jenkins existed, and any

constitutional inadequacy in the pretrial lineup procedure by virtue of Jenkins

unrepresented status does not cast doubt upon this conclusion. To the contrary, clear and

convincing evidence exists that Grigsby's identification of Jenkins at trial was not the result of any constitutional inadequacy in the pretrial identification procedure, but rather was the product of an identification Grigsby had already made at the crime scene and retained in his own mind.

In light of the above, the undersigned concludes that Grigsby's in-court identification of Jenkins was both reliable and based on an independent source untainted by petitioner's unrepresented status at the pre-trial line-up.

Given the above facts and the admissibility of Grigsby's in-court identification of petitioner, the harmless error question with respect to the admission of testimony regarding Grigsby's identification of Jenkins at the uncounseled pretrial lineup is not a difficult one. Grigsby testified at trial that he had "no doubt" that the person who robbed him was Jenkins. [tr. pg. 236]. The testimony regarding Grigsby's pre-trial identification of petitioner added little to this positive identification at trial. This is particularly true in view of the fact that Jenkins' unrepresented status at the pretrial lineup and the claimed suggestiveness of the line-up was argued to the jury by counsel. [tr. pg. 201-204, 212-217, 221-223, 242-245]. Apparently, the jury believed Grigsby when he testified at trial that he had "no doubt" that Jenkins was his assailant, and that certitude was not dispelled by defense counsel's exhaustive cross-examination on the reliability of Grigsby's identification. [tr. pg. 237-240, 246-248].

Further, there was other convincing evidence linking Jenkins to the Grigsby armed robbery which corroborated Grigsby's doubt-free identification of Jenkins as the robber at trial. Grigsby's watch, which had been taken from him during the robbery, was found in Jenkins' possession and Jenkins gave no credible explanation of how he came into possession of the watch. In light of the above, the undersigned is convinced beyond a reasonable doubt that the exclusion of testimony regarding Grigsby's pretrial identification of Jenkins would not have affected the jury's verdict. Thus, even assuming *arguendo* that petitioner's Sixth Amendment right to counsel at the physical lineup had been violated, *habeas* relief is not warranted.

## II. Due Process Violation

Petitioner also complains that the physical lineup procedure was impermissibly suggestive and unreliable in violation of his right to due process. Thus, petitioner argues that Grigsby's in-court identification of petitioner, which lacked reliability independent of the unduly suggestive identification procedure, was tainted and should have been excluded from evidence. Although unclear, it appears that petitioner argues that the lineup procedure was unduly suggestive because petitioner had no counsel present when Grigsby selected petitioner as the perpetrator. Based on petitioner's testimony at the Motion to Suppress hearing, petitioner also speculates that Grigsby "might have been coerced or ... his attention ... focused on petitioner...after some prompting." He further argues that the

identification was not reliable independent of the suggestive procedure because Grigsby's pre-lineup description of the perpetrator did not fit petitioner's description, and that the lineup occurred five months after the robbery, and thus was not reliable enough to prevent a substantial likelihood of misidentification.

In conducting *habeas* review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Estelle v. McGuire,* 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). The admission of evidence deriving from impermissibly suggestive identification procedures can violate the due process rights of criminal defendants if those procedures result in a "very substantial likelihood of irreparable misidentification." *Neil v. Biggers,* 409 U.S. 188, 196, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

Courts have developed a two part test when considering whether identification evidence has resulted in a constitutional violation. *United States v. Burbridge,* 252 F.3d 775, 780 (5th Cir.2001). The defendant must first prove that the pretrial identification procedure was impermissibly suggestive. *Biggers,* 409 U.S. at 198-99, 93 S.Ct. at 382; *United States v. Guidry,* 406 F.3d 314, 319 (5th Cir. 2005). If the identification procedure was not impermissibly suggestive, the inquiry ends. *Guidry,* 406 F.3d at 320-321; *Livingston v. Johnson,* 107 F.3d 297, 309 (5th Cir.1997) (citation omitted); *see also United States v. Honer,* 225 F.3d 549, 553 (5th Cir.2000). If the procedure was impermissibly suggestive, the court must then "determine whether the in-court

identification is reliable, notwithstanding the impermissibly suggestive pretrial [identification]." *Honer*, 225 F.3d at 553. This inquiry requires the court to determine "whether based on the totality of the circumstances, the [procedure] posed a very substantial likelihood of irreparable misidentification." *Honer*, 225 F.3d at 553 (quotations and citations omitted).

With this latter determination, courts are to consider the *Biggers* factors, set forth above, namely: (1) the witness's opportunity to view the perpetrator at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description; (4) the level of certainty demonstrated when making the identification; and (5) the time between the crime and the identification ("the *Biggers* factors"). *Biggers*, 409 U.S. at 199-200; *Manson*, 432 U.S. at 114; *Burbridge,* 252 F.3d at 780.

In this case, the physical lineup was not impermissibly suggestive. The photographs of the participants reveals that Jenkins was not placed with grossly dissimilar individuals, in terms of age, race or other distinguishing features, and that all participants were similarly attired. [rec. doc. 15, Ex. D, pg. 28, 30-32].

Further, the circumstances surrounding the overall presentation of the lineup to Grigsby do not support a claim that the procedure employed was unduly suggestive. Petitioner was incarcerated at the time of the lineup. However, there in no evidence that the police or jail authorities refused petitioner counsel. Rather, the police contacted the Public Defender's Office when petitioner requested that an attorney be present during the

lineup. However, since no interrogation was to be conducted, that office did not furnish

counsel. [tr. pg. 138-139, 147, 158, 201-202].

Moreover, although no attorney was present, the lineup was conducted pursuant to

routine procedures employed by police and jail authorities throughout this country.

Petitioner was given the opportunity to chose his position in the lineup. [tr. pg. 139, 145,

202]. The participants, which included petitioner and five jail volunteers, walked into the

viewing room, where Grigsby could inspect them through a one-way mirror. Each

participant was asked to step forward, turn around and step backward, and then Grigsby

was given an opportunity to request particular participants to step forward again. [tr. pg.

140-146, 202-205, 221-222, 235]. Grigsby and Detective Hundley were together in the

viewing room. However, other than the procedure which was to be employed, Grigsby

was told nothing about which participant was the suspect. [tr. pg. 140-141, 216-217, 235,

245]. Indeed, even after Grigsby selected Jenkins, Hundley refused to tell Grigsby

whether he selected the person the police suspected was his armed robber, a fact that

upset Grigsby. [tr. pg. 235-236, 245].

Although based on his own self-serving testimony, in which petitioner claimed that

he was made to step forward initially and then again after each of the other five

participants [tr, pg. 155-156], petitioner speculates that an attempt was made to influence

Grigsby in the identification process, both Grigsby and Detective Hundley's testimony

belie that contention. Hundley testified that he could not remember how many times

Jenkins was asked to step forward, but that he did not think it was over three times. [tr. pg. 146, 222]. Grigsby unequivocally testified that each participant stepped forward once and that he requested participant number one, Jenkins, and participant number four to step forward again one time, and that immediately thereafter, he picked participant number one, Jenkins, as his assailant. [tr. pg. 235-236, 243-244]. In denying petitioner's motion to suppress, the trial court necessarily discounted petitioner's version of events. Under the circumstances, it does not appear that the trial court's ruling was contrary to, nor an unreasonable application of federal law, nor was it an unreasonable determination of facts in light of the evidence presented.

Because petitioner has not demonstrated that the lineup procedure was impermissibly suggestive, this court's inquiry ends. *Guidry,* 406 F.3d at 320-321; *Livingston,* 107 F.3d at 309; *Honer,* 225 F.3d at 553. Jenkins' constitutional attack is meritless.

However, even if the undersigned were to conclude that the procedure employed was impermissibly suggestive, as discussed above, the undersigned nevertheless has found that the in-court identification made by Grigsby was otherwise reliable under the *Biggers* factors and that accordingly, the in-court identification had a source independent of any unduly suggestive identification procedure. The evidence adduced at trial and the suppression hearing shows that Grigsby's in-court identification of Jenkins was based

solely on his having seen Jenkins at the time of the armed robbery, and the in-court identification was not influenced by any out-of-court suggestive identification procedures.

In sum, the lineup procedure was not impermissibly suggestive. Moreover, under the totality of the facts in this case, Grigsby's in-court identification of petitioner was independently reliable despite any alleged taint. The identification procedures did not give rise to a substantial likelihood of irreparable misidentification. Consequently, there has been no constitutional violation. Petitioner is not entitled to federal *habeas* relief on this claim.

### III. Qualifications of Kevin Louis Stoutes as an Expert

Petitioner contends that the trial court abused its discretion by qualifying Detective Kevin Louis Stoutes as a fingerprint identification expert.[10] Hence, petitioner complains that Stoutes' expert testimony was erroneously admitted at trial. He contends that under Louisiana Rule of Evidence article 702, and its federal counterpart, Stoutes lacked the requisite qualifications to testify as an expert in the field of fingerprint identification. He specifically complains that Stoutes had "only forty (40) hours credit and some on the job training" and that Stoutes had "not been designated or classified as an expert in fingerprint analysis in the State of Louisiana."

Generally, the admissibility of evidence is a matter of state law entrusted to the discretion of the trial court. *Beathard v. Johnson,* 177 F.3d 340, 347 (5th Cir.1999). In

---

[10]Petitioner complains that Stoutes was erroneously accepted as a fingerprint analysis expert. However, Stoutes was tendered and accepted as an expert in fingerprint identification. [tr. pg. 258, 263].

*habeas* actions, federal courts do not sit "as a super state supreme court" to review admissibility of evidence under state law. *Estelle v. McGuire*, 502 U.S. at 67-68; *Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998); *Skillern v. Estelle*, 720 F.2d 839, 852 (5th Cir. 1983) citing *Porter*, 709 F.2d at 957. Rather, federal courts may intervene only to correct wrongs of federal constitutional dimension. See *Lavernia v. Lynaugh*, 845 F.2d 493, 496 (5th Cir. 1988). Thus, federal courts will not grant *habeas* relief for errors in a trial court's evidentiary rulings unless those errors are so extreme that they constitute a denial of fundamental fairness under the Due Process Clause. *Neal*, 141 F.3d at 214 citing *Porter*, 709 F.2d at 957; *Little*, 162 F.3d at 862. *Habeas* relief is justified only if testimony was erroneously admitted and the testimony was a "crucial, critical, highly significant factor" in the defendant's conviction. *Porter,* 709 F.2d at 957 quoting *Anderson v. Maggio*, 555 F.2d 447, 451 (5th Cir.1977); *Skillern,* 720 F.2d at 852; *Little*, 162 F.3d at 862; *Neal*, 141 F.3d at 214.

In the instant case, petitioner's argument focuses on whether, under Louisiana state law, the trial court conducted an adequate inquiry into Stoutes' qualifications prior to admitting his expert testimony at trial. As noted above, this court is without authority to review such state law evidentiary rulings. To the extent that petitioner contends that the admission of this expert testimony violated his due process rights, that contention is without merit. The trial court committed no error, much less any error creating fundamental unfairness, when it admitted Stoutes' expert testimony. Contrary to

petitioner's allegations, the record contains sufficient evidence of Stoutes' knowledge, skill, education, training and experience to qualify him as expert witnesses in the field of fingerprint identification.

Louisiana Code of Evidence article 702 permits the admission of expert testimony when the witness is qualified by "knowledge, skill, expertise, training, or education." In determining whether to accept a witness as an expert, the trial court has great discretion. *State v. Craig*, 699 So.2d 865, 870 (La.1997). "A combination of specialized training, work experience, and practical application of the expert's knowledge can combine to demonstrate that a person is an expert." *State v. Gipson*, 850 So.2d 973, 982 (La. App. 2nd Cir. 2003). However, experience alone may be sufficient to qualify a person as an expert. *Gipson*, 850 So.2d at 982 citing *State v. Kunzman*, 741 So.2d 112 (La. App. 2nd Cir. 1999); *State v. Hurst*, 828 So.2d 1165, 1172 (La. App. 4th Cir. 2002) citing *Belle Pass Terminal, Inc. v. Jolin, Inc.*, 634 So.2d 466, 477 (La.App. 1st Cir. 1994).

Stoutes testified as to his training, education and extensive experience in the field of fingerprint identification and analysis. Stoutes testified that he has been with the Lafayette Parish Sheriff's Office for fifteen years, and has worked as a detective with the Lafayette Parish Crime Scene, a unit that collects and processes evidence from "major [crime] scenes", for five years. [tr. pg. 254-255]. In this capacity, Stoutes has been extensively involved with fingerprint identification; he has examined approximately one thousand fingerprints and made forty-six "hits" using the Automated Fingerprint Identification System (the "AFIS"), a statewide computer base that stores over three

million six hundred thousand fingerprints. [tr. pg. 254-255, 257-258]. Detective Stoutes completed a three year apprenticeship program through the Sheriff's Office. [tr. pg. 260]. He also attended a forty hour training course on fingerprint identification at Louisiana State University in 1995 for which he received a certificate, attended a forty hour course on palm print identification in Florida in 1996, and since 1995 has attended and received certificates from yearly four day fingerprint identification continuing education "refresher" courses given by the "II", which is the Louisiana Division of Fingerprints, a professional organization of which Stoutes is a member. [tr. pg. 255, 258-259].

Following the detective's testimony regarding his extensive experience in the field, and after giving the defense the opportunity to traverse the witness, the trial court accepted the Detective as an expert in the field of fingerprint identification. [tr. pg. 263].

In light of Detective Stoutes' lengthy experience in the field of fingerprint identification, spanning approximately five years, and his extensive work with the Crime Scene unit with fingerprint identification and examination, as well as his having completed specialized training in the field, the trial court committed no error in accepting Detective Stoutes as an expert in his field. See *Gipson*, 850 So.2d at 982; *State v. Hodges*, 526 So.2d 1275, 1284 (La. App. 3rd Cir. 1988); *State v. Harris*, 510 So.2d 439, 447 (La. App. 1st Cir. 1987); *State v. Taylor*, 508 So.2d 987988-989 (La. App. 2nd Cir. 1987); *State v. Lambert*, 475 So.2d 791 (La. App. 3rd Cir. 1985) citing *State v. White*, 430 So.2d 174 (La. App. 2nd Cir. 1983) and *State v. Baldwin*, 388 So.2d 664 (La. 1980); *State*

*v. Russell*, 434 So.2d 460 (La. App. 2nd Cir. 1983); *State v. Overton*, 337 So.2d 1201 (La. 1976); *State v. Madison*, 345 So.2d 485, 495-496 (La. 1977). The fact that he had not previously been accepted as an expert in court is of no import in light of the Detective's extensive experience, training and education in the field of fingerprint identification. See *Hodges*; *Russell*, supra. Indeed, as the prosecutor correctly noted during argument of the Detective's qualifications, "there's always got to be a first time...[otherwise] we'd never have any experts." [tr. pg. 264].

Since the undersigned has determined that no error occurred in the admission of this evidence as Stoutes' is a qualified expert in his field, Jenkins has no basis for any alleged due process violation. *Robinson v. Whitley,* 2 F.3d 562, 566-67 (5th Cir. 1993) citing *Banks v. McGougan*, 717 F.2d 186, 190 (5th Cir.1983). Moreover, even if Stoutes' testimony had been erroneously admitted, considering that Detective Stoutes testified that he was unable to make an identification of any fingerprint found at the crime scene, but rather, that his supervisor had matched a print [tr. pg. 281-282], the undersigned cannot find that the testimony was a "crucial, critical, highly significant factor" in the defendant's conviction. *Porter,* 709 F.2d at 957; *Anderson*, 555 F.2d at 451; *Skillern,* 720 F.2d at 852; *Little,* 162 F.3d at 862; *Neal*, 141 F.3d at 214. Accordingly, *habeas* relief is not warranted.

## CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** the instant petition for federal *habeas corpus* relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See <u>Douglass v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir. 1996).**

Signed at Lafayette, Louisiana on November 22, 2005.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE